J. S44044/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF THE | : | IN THE SUPERIOR COURT OF |
| ADOPTION OF R.O.C., JR. | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: | : | No. 782 WDA 2019 |
| J.M.W., NATURAL MOTHER | : | |

Appeal from the Order Entered April 23, 2019,
in the Court of Common Pleas of Cambria County
Orphans' Court Division at No. 2017-832-IVT

| | | |
|---|---|---|
| IN THE MATTER OF THE | : | IN THE SUPERIOR COURT OF |
| ADOPTION OF:  O.Z.C. | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: | : | No. 783 WDA 2019 |
| J.M.W., NATURAL MOTHER | : | |

Appeal from the Order Entered April 23, 2019,
in the Court of Common Pleas of Cambria County
Orphans' Court Division at No. 2017-833-IVT

| | | |
|---|---|---|
| IN THE MATTER OF THE | : | IN THE SUPERIOR COURT OF |
| ADOPTION OF:  H.A.H. | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: | : | No. 784 WDA 2019 |
| J.M.W., NATURAL MOTHER | : | |

Appeal from the Order Entered April 23, 2019,
in the Court of Common Pleas of Cambria County
Orphans' Court Division at No. 2017-831-IVT

BEFORE:  SHOGAN, J., McLAUGHLIN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED SEPTEMBER 23, 2019**

J.M.W. ("Mother")[1] appeals from the April 23, 2019 order entered in the Court of Common Pleas of Cambria County, Orphans' Court Division, involuntarily terminating her parental rights to her dependent children, R.O.C., Jr., male child, born in October 2016; O.Z.C., female child, born in August 2014; and H.A.H., male child, born in January 2010 (collectively, the "Children"), pursuant to the Adoption Act, 23 Pa.C.S.A. §§ 2511(a)(1), (2), (5), (8), and (b).[2]  After careful review, we affirm.

A previous panel of this court set forth the following:

> [Cambria County Children and Youth Service ("CYS")] became involved with this family in March 2015 following allegations of medical neglect.  Then 7-month-old O.Z.C. had only been seen by a pediatrician once since her birth and had no immunizations;  Mother  had  also  missed

---

[1] We note that Mother is also known as J.M.H.

[2] Pursuant to Pa.R.A.P. 513, this court **sua sponte** consolidated these appeals because they involve related parties and issues.  (**Per curiam** order, 6/5/19.)

We note that the trial court entered one order terminating Mother's parental rights to the Children.  Mother's counsel complied with **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), and **Commonwealth v. Creese**, ___ A.3d ___, 2019 PA Super. 241 (Pa.Super. filed August 14, 2019), by filing separate notices of appeal for each docket, each of which contained only a single docket number.

We further note that the record reflects that W.K.H. is the biological father of H.A.H., and R.O.C. is the biological father of O.Z.C. and R.O.C., Jr. By decrees entered April 23, 2019, the trial court involuntarily terminated the parental rights of W.K.H. and R.O.C. to their respective children.  The record reflects that at the time of the termination hearing, both biological fathers were incarcerated.  Additionally, nothing in the certified record indicates that either W.K.H. or R.O.C. appealed the decrees terminating their parental rights to their respective children.

five pediatrician appointments for H.A.H. CYS initially arranged services to stabilize the family, but then filed a dependency petition in January 2016. The basis for the petition was Mother's considerable lack of cooperation with service providers as well as Mother's positive tests for opiates, cocaine, and marijuana. There were also allegations of homelessness and Mother's outstanding arrest warrant.

Over the next two years, Mother was ordered to comply with a series of goals that would facilitate reunification. As the dependency cases proceeded, Mother's compliance appeared to be minimal. For example, Mother attended less than a quarter of her visits scheduled with Children.

In January 2018, the [trial] court held a hearing on CYS' termination petition. Mother appeared with counsel at the hearing. The [trial] court appointed Christopher G. Gvozdich, Esquire, to represent Children. At the conclusion of the hearing, the [trial] court directed the parties to submit memoranda arguing their respective positions. Thereafter, on April 23, 2018, the [trial] court entered terminating decrees. Mother timely filed notices of appeal along with concise statements of errors complained of on appeal [pursuant to Pa.R.A.P. 1925(a)(2)(i). Thereafter, the trial court filed its Rule 1925(a)(2)(ii) opinion.]

*In re: Adoption of H.A.H., R.O.C., Jr. and O.Z.C.*, No. 801 WDA 2018, unpublished memorandum at 1-2 (Pa.Super. filed October 10, 2018) (record citations omitted).

The record reflects that the previous panel of this court vacated the involuntary termination order after finding that the record was deficient as to H.A.H.'s preferred outcome and as to whether a conflict existed between H.A.H.'s legal and best interests and remanded with directions to

H.A.H.'s counsel to conduct an additional interview to discern and articulate H.A.H.'s legal interest. (*Id.* at 6-8.) This court further directed that if H.A.H.'s preferred outcome was inconsistent with termination, a new termination hearing would be required as to all of the Children because H.A.H.'s preference may impact R.O.C., Jr., and O.Z.C. (*Id.* at 7.) We note that the panel determined that R.O.C., Jr., and O.Z.C. were too young to articulate a preference. (*Id.* at 6-7.) At the time of the termination hearing, R.O.C., Jr., was 3 years old and O.Z.C. was 17 months old.

On remand, counsel re-interviewed H.A.H.[3] and submitted a report to the trial court on November 15, 2018, which stated that "there does appear to be some inconsistency and conflict regarding H.A.H.'s wishes." As such, counsel recommended that the trial court conduct a hearing and appoint separate counsel to represent H.A.H.'s "potentially competing interests." (Trial court order and opinion, 4/23/19 at 2, ¶ 2, quoting report of 11/15/18; *see also* notes of testimony, 4/17/19 at 6.) Based on counsel's report and recommendations, the trial court appointed legal counsel for H.A.H. and held a hearing to determine H.A.H.'s preference.

After hearing H.A.H.'s testimony and considering the arguments of counsel, the trial court concluded that H.A.H. could not articulate a clear

---

[3] The record reflects that H.A.H. is in kinship care with his paternal aunt in Ohio, who is an adoptive resource. Because the driving time between H.A.H.'s kinship residence and Cambria County is in excess of four hours, counsel conducted the interview via FaceTime. (Notes of testimony, 4/17/19 at 7, 11.) H.A.H. did, however, personally appear at the April 17, 2019 hearing.

preferred outcome and that the best interests of H.A.H., R.O.C., Jr., and O.Z.C. were consistent with the termination proceedings. The trial court then re-entered its April 23, 2018 decrees terminating Mother's parental rights to the Children. Mother filed timely notices of appeal, together with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(ii). Thereafter, the trial court entered an order "in response to the Appeal Rule 1925(b)" stating that it was relying on its April 23, 2018 and April 23, 2019 orders and opinions. (Order of court, 6/4/19.)

Mother raises the following issues on appeal:

1. Whether the [t]rial [c]ourt erred in terminating [Mother's] parental rights to the subject child, because [p]etitioners failed to meet their burden by clear and convincing evidence, including, but not limited to failing to identify how termination of [Mother's] parental rights would impact the child, in particular, the bond between [Mother] and the [C]hildren[?]

2. Whether the trial court erred in terminating [Mother's] parental rights to the subject [C]hildren, in light of H.A.H.'s on-the-record testimony which clearly indicated that his legal interests were against termination of [Mother's] parental rights[?]

Mother's brief at 3.

In matters involving involuntary termination of parental rights, our standard of review is as follows:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re*

> *Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "[A] decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, 9 A.3d [1179, 1190 (Pa. 2010)].

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.,* 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

The termination of parental rights is guided by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her

> parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted). We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *In re C.S.*, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*), quoting *Matter of Adoption of Charles E.D.M. II*, 708 A.2d 88, 91 (Pa. 1998).

Here, the trial court terminated Mother's parental rights pursuant to Sections 2511(a)(1), (2), (5), and (8), as well as (b). We have long held that, in order to affirm a termination of parental rights, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b). *In re B.L.W.*, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*). Here, we analyze the trial court's termination decrees pursuant to Subsections 2511(a)(2) and (b), which provide as follows:

> **(a)  General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
>> (2)  The repeated and continued incapacity, abuse, neglect or refusal

of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

**(b)** **Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by terminating Mother's parental rights pursuant to Section 2511(a)(2).[4]

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity,

---

[4] We note that Mother advances no argument as to why termination of her parental rights to the Children was inappropriate under Section 2511(a)(1), (2), (5), or (8).

> abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re Adoption of C.D.R.*, 111 A.3d 1212, 1216 (Pa.Super. 2015), quoting *In re A.L.D.*, 797 A.2d 326, 337 (Pa.Super. 2002). "Parents are required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. . . . [A] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *In re A.L.D.*, 797 A.2d at 340 (internal quotation marks and citations omitted).

Here, in terminating Mother's parental rights to the Children under Section 2511(a)(2), the trial court noted that H.A.H. and O.Z.C. were placed in CYS's care and custody pursuant to a January 19, 2016 emergency order and a January 20, 2016 shelter care order because Mother was homeless and residing with friends, Mother admitted to daily heroin use, Mother had been uncooperative with CYS and failed to meet with caseworkers, and CYS could not ensure the safety of H.A.H. and O.Z.C. because of Mother's lack of cooperation. (Trial court opinion, 4/23/18 at 2.) When Mother gave birth to R.O.C., Jr., in October of 2016, she had just been released from prison and was homeless. (*Id.* at 4.) Because Mother failed to attend a hearing involving

newly born R.O.C., Jr., a bench warrant was issued for her arrest. (*Id.*) On November 3, 2016, R.O.C., Jr., was determined to be dependent. (*Id.*)

It was determined at a hearing on January 4, 2017, that Mother only minimally complied with the permanency plan and made only minimal progress toward alleviating the circumstances that necessitated the original placement of the Children. (*Id.*) Thereafter, another bench warrant was issued for Mother's arrest as a result of her failure to appear for a goal change hearing on June 14, 2017. (*Id.*) When the hearing occurred on June 28, 2017, the trial court found that Mother only minimally complied with the permanency plan and made only minimal progress toward alleviating the circumstances that necessitated the original placement of the Children. (*Id.*) Following a hearing on December 4, 2017, it was determined that Mother did not comply with the permanency plan and made no progress toward eliminating the circumstances that necessitated the original placement of the Children. (*Id.* at 5.) At the termination hearing, Mother admitted that she did not cooperate with CYS because she "was in an active addiction" and "didn't care." (Notes of testimony, 1/29/18 at 138.) Mother also confirmed that even though H.A.H. and O.Z.C. had been placed in CYS custody in January 2016 and R.O.C., Jr., was placed in CYS's custody as a newborn in November 2016, she continued to use drugs and did not seek help for her addiction until October 2017, which was after the termination petitions were filed on September 26, 2017. (*See id.* at 153.) The record further reflects that at

the time of the termination hearing, Mother had not been in stable housing for a six-month period, Mother was unemployed, and Mother was not actively seeking employment.  (*Id.* at 153-157.)

We conclude that the record supports the trial court's factual findings and that the trial court did not abuse its discretion in terminating Mother's parental rights under Section 2511(a)(2).  The record demonstrates that the conditions that existed upon removal establish repeated and continued incapacity, abuse, neglect, or refusal of Mother that caused the Children to be without essential parental care, control, or subsistence necessary for their physical or mental well-being.  The record also supports the trial court's conclusion that Mother continued to lack capacity to parent the Children.

We now turn to whether termination was proper under Section 2511(b).  As to that section, our supreme court has stated as follows:

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child."  23 Pa.C.S.[A.] § 2511(b).  The emotional needs and welfare of the child have been properly interpreted to include "[i]ntangibles such as love, comfort, security, and stability."  *In re K.M.*, 53 A.3d 781, 791 (Pa.Super. 2012).  In *In re E.M.*, 620 A.2d [481, 485 (Pa. 1993)], this Court held that the determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child.  The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond.  *In re K.M.*, 53 A.3d at 791.  However, as discussed below, evaluation of a child's bonds is not always an easy task.

*In re T.S.M.*, 71 A.3d at 267. "In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa.Super. 2008) (citation omitted).

When evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well. Additionally, Section 2511(b) does not require a formal bonding evaluation." *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2009) (internal citations omitted).

Moreover,

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. . . .

*In re Adoption of C.D.R.*, 111 A.3d at 1219, quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa.Super. 2011) (quotation marks and citations omitted).

Our supreme court has stated that, "[c]ommon sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents."

***In re T.S.M.***, 71 A.3d at 268. The court directed that, in weighing the bond considerations pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." ***Id.*** at 269. The ***T.S.M.*** court observed, "[c]hildren are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." ***Id.***

In her brief, Mother contends that CYS failed to meet its burden of proving by clear and convincing evidence "how termination of [Mother's] parental rights would impact the Children." (Mother's brief at 9-21.) The record belies Mother's claim.

The record reflects that Mother admitted that she has no bond with R.O.C., Jr., who was taken into CYS's custody in November 2016, which was shortly after his birth in October 2016. (***See*** notes of testimony, 1/29/18 at 142.) Additionally, CYS caseworker Barb Brzana testified that R.O.C., Jr., is "doing well" and "bonded with his foster parent." (***Id.*** at 50.)

With respect to O.Z.C., CYS took her into custody in January 2016 when she was approximately 17 months old. At the time of the termination hearing, O.Z.C. had been in CYS custody for two years. Ms. Brzana testified that O.Z.C. does not know who Mother is. (***Id.*** at 52.) The record reflects that O.Z.C. is in foster care with her half-brother, H.A.H. Ms. Brzana testified that O.Z.C. is "doing very well in her placement" and that she is bonded with her foster mother. (***Id.*** at 49.)

With respect to H.A.H., CYS took him into custody in January 2016 when he was 6 years old. At the time of the termination hearing, H.A.H. had been in CYS custody for two years. Ms. Brzana testified that H.A.H. loves Mother, but that "his relationship with her is strained by the broken promises and lack of followthrough [sic], and it shows in his behaviors." (*Id.* at 52.) Ms. Brzana testified that although H.A.H. struggles "with some behavioral problems," those "problems have decreased immensely" since he's been in foster care. (*Id.* at 14.) Ms. Brzana further testified that H.A.H. is "doing well in school with little disruption" and is "flourishing." (*Id.*) H.A.H. is bonded with his foster mother. (*Id.* at 49.)

Ms. Brzana also testified that it would be in the Children's best interests to terminate parental rights and free them for adoption. (*Id.* at 54.) Ms. Brzana stated that termination would not be detrimental to the Children's development, but would promote their development, as well as their physical and emotional needs and welfare. (*Id.*) Licensed social worker Sarah Sherry also testified that the relationship between the Children and Mother was not strong and that termination would be in the Children's best interests. (*Id.* at 84.)

Mother finally contends that H.A.H.'s testimony at the hearing to determine his preference "indicates that his legal interests were against termination." (Mother's brief at 22.) In so arguing, Mother sets forth select portions of H.A.H.'s testimony and invites this court to reweigh the evidence

in an effort to convince us to arrive at a different result. We decline Mother's invitation. It was for the trial court to make all credibility determinations and resolve conflicts in the evidence. ***In re M.G.***, 855 A.2d at 73-74. Where, as here, the record supports the trial court's findings, we will not disturb those findings on appeal. ***See***, ***e.g.***, ***In re Adoption of T.B.B.,*** 835 A.2d at 394.

Based upon our review of the record, we find no abuse of discretion and conclude that the trial court appropriately terminated Mother's parental rights under Sections 2511(a)(2) and (b).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/23/2019